# WILLIAM H. SPALDING Et Al.

## vs.

# ELISHA D. HALL Et Al.

1. A tenancy at will cannot arise in the District of Columbia without an express contract to that effect. Act of July 4, 1864.
2. Prior to July 4, 1864, where the tenant held over by consent, given either expressly or constructively, after the determination of a lease for years, this was a tenancy from year to year. In this District such tenancies, if they existed on the 4th of July, 1864, cannot be terminated by a notice of thirty days, but require a notice of six months to be given prior to the expiration of the yearly tenancy.
3. The language of the first section of the Act of July 4, 1864, declaring "that the holding of lands or tenements by contract or lease, the *terms of which have expired,*" &c., is to be construed as if it read, "the term of which has expired."
4. What would have been a tenancy from year to year before the passage of the Act of July 4, 1864, must now "be deemed and held to be" a tenancy at sufferance, and may now be terminated by a notice, in writing, of thirty days, served upon the tenant.
5. All tenancies arising in the mode mentioned in the first section of the act, and continuing after its passage, can only be terminated in the manner prescribed by the law as it existed prior thereto, and when so terminated the landlord may proceed against the tenant to recover possession under the provisions of the second section of the act.
6. The tenancy at sufferance mentioned in the first section of the Act of July 4, is "a holding by contract or lease, the terms of which have expired;" viz., a holding by the express or implied assent of the landlord, but the common law tenancy at sufferance is a holding over *by wrong* after the determination of the tenant's interest, that is to say, a holding in opposition to and in defiance of the will of the landlord. In the first case a thirty days' notice to quit is necessary before the tenant can be proceeded against under the second section of the act, but in the latter case proceedings may be instituted under that section at once and without notice; the meaning and intent being, that whenever the tenancy *ends,* if the tenant does not quit the premises, the landlord may institute forthwith and without notice, this summary proceeding to obtain possession.
7. The tenancy ends when the period for which the premises are leased expires. If the parties make no agreement as to the length of time for which the premises are leased, the tenancy may be ended by a notice of thirty days, if such tenancy was created subsequently to the 4th of July, 1864. If it was created before that

time, and is still subsisting, it can be ended only in the manner prescribed by the law as it existed before the passage of the act.

8. This summary remedy to recover possession is extended to all persons who, by the act of the lessor or by operation of law, are placed in the same relation to the tenant as the original lessor, to wit, the grantees, assignees, devisees or heirs-at-law of the lessor.

9. Therefore, where A obtains from the owner of the premises a lease thereof, to commence at the expiration of B's tenancy, A cannot avail himself of the provisions of the act, to recover the possession from B, who holds over after the expiration of his tenancy.

Law. No. 1309. Circuit Court. Decided November 21, 1864.

APPEAL from a justice of the peace in a landlord and tenant proceeding.

The defendants, Hall and Waters, were, as tenants of Mrs. Scott, in possession of a house in this city, for the unexpired term of a lease, ending June 30, 1864. On the 16th of June of the same year, Mrs. Scott executed to Spalding and Rapley a five years lease to commence July 1, 1864. Hall and Waters received no notice to quit and continued to hold possession after the expiration of their term. Thereupon, on August 3, Spalding and Rapley instituted proceedings against them to obtain possession under the Act of July 4, 1864, before a justice of the peace. Judgment for possession having been rendered against the defendants, an appeal was taken to the Circuit Court.

MR. WALTER S. COX, for plaintiffs.

MESSRS. BRADLEY & BRADLEY, for defendants.

MR. JUSTICE OLIN delivered the opinion of the Court:

The facts in this case involve the true construction and meaning of the first and second sections of the act entitled "An act to regulate proceedings in cases between landlord and tenant," passed July 4, 1864.

I will proceed to give briefly my construction of the statute. I am not insensible, I trust, to the vast importance of this statute to the people of this District, and that its provisions be clearly understood both by landlords and tenants, and thus enable them to act understandingly in reference to this subject.

The first section provides that after the passage of the

act—that is, after the 4th of July, 1864, no tenancy at will shall arise or be created without an express contract to that effect. A tenant at will is "one who holds lands or tenements let to him by another at the will of the lessor." 2d Bl. Com., 145; 4th Kent Com., 110.

But this definition gives a very imperfect idea of the rights and obligations of a landlord and tenant, between whom a tenancy at will subsists. A tenancy at will arose in every case where one man leased lands or tenements to another, and no fixed period of time was agreed upon at which the occupancy thereof should cease.

I cannot better explain the nature of such a tenancy than by quoting from the 4th Volume of Kent's Commentaries, pp. 111, 112.

Speaking of estates at will, he says: "It was determined very anciently by the common law, and upon principles of justice and policy, that estates at will were equally at the will of both parties, and neither of them was permitted to exercise his pleasure in a wanton manner, and contrary to equity and good faith. The lessor could not determine the estate after he had sowed and before he had reaped, so as to prevent the necessary egress and regress to take away the implements. The possession of the land on which the crop is growing continues in the tenant until the time of taking it arrives. Nor could the tenant, before the period of payment of the rent arrived, determine the estate so as to cut off the landlord from his rent. Estates at will in the strict sense have become almost extinguished under the operation of judicial decisions. Lord Mansfield observed that an infinite quantity of land in England was holden without lease. They were all, therefore, in a technical sense, estates at will; but such estates are said to exist only notionally, and when no certain term is agreed on they are construed to be tenancies from year to year, and each party is bound to give reasonable notice of an intention to terminate the estates.

The language of the books now is, that a tenancy at will cannot now arise without express grant or contract, and that all general tenancies are constructively tenancies from year to year. If the tenant holds over by consent given either expressly or constructively, after the determination of a lease for years, it is held to be evidence of a new con-contract without any definite period, and is construed to be a tenancy from year to year. The moment the tenant is suffered by the landlord to enter on the possession of a new year, there is a tacit renovation of the contract for another year, and a half's year's notice to quit must be given prior to the end of the term."

I have thus quoted at length this exposition of a tenancy at will, or, more properly, a tenancy from year to year, because practically we have no tenancies at will, strictly speaking, and because I find a vast amount of real estate is now held in this District by that tenure known as a tenancy from year to year. Such tenancies existing on the 4th of July last, cannot be terminated by a notice of thirty days but require a notice of six months to be given prior to the expiration of the yearly tenancy.

The first section further provides that an occupation, possession or holding of any real estate without express contract or lease shall be deemed to be a tenancy by sufferance, and that the holding of lands or tenements by contract or lease the terms (it means term) of which have (has) expired shall be deemed and held to be a tenancy by or at sufferance.

We have thus two species of tenancies mentioned in this first section, one of which is described to be a tenancy at will, and the other it is declared shall be, "deemed and held to be" a tenancy at sufferance; and those tenancies thus defined, arising in the way mentioned in this first section after the 4th of July, 1864, may be terminated or put an end to by a notice in writing of thirty days served upon the tenant, &c. All tenancies arising in the mode men-

tioned in this first section, and continuing after the 4th of July, 1864—that is, after the passage of the act in question—can only be terminated in the manner prescribed by the law as it existed prior to the passage of the act of July 4th, and when so terminated the landlord may proceed against the tenant to recover possession according to the provisions of the second section of the act.

I may remark here, that a tenancy arising or created in any of the modes mentioned in the first section of the act would not, in the absence of that act, be held either a tenancy at will or at sufferance, but simply a tenancy from year to year, and would have required a notice of six months to terminate it.

The argument has been ingeniously pressed upon the Court, that because the act provides that a tenancy arising or created in the way mentioned therein, shall be deemed and held to be a tenancy at sufferance, which could only be terminated by a notice of thirty days, it followed that a tenant by sufferance, properly so known before the passage of this act, could not be proceeded against under the provisions of the second section without first having been served with a thirty day's notice to quit. Such a construction of this statute would nullify the plain and express provisions of the second section of the act, and deprive the statute of all its remedial character.

The only embarassment in the construction of this first section arises in the use of the language, that where the holding is by contract or lease, the terms of which have expired it shall be deemed and held to be a tenancy at sufferance. Now, prior to the passage of this act, a tenancy at sufferance arose, or was created in one way only. "A tenant at sufferance," says Blackstone," is one that comes into the possession of land by lawful title, but holds over by wrong after the determination of his interest." (See 2 Bl.

Com., 150; 4 Kent's Com., 116; Co. Litt., 57 b.) Such a tenant at common law had no estate in the premises he held, and was entitled to no notice to quit. The landlord might enter upon the premises and remove him and his goods therefrom, and no action of trespass could be maintained against him for so doing.

It will be seen at a glance, therefore, the distinction between the tenancy mentioned in the first section, and described as a "*holding by contract or lease, the terms of which have expired,*" and a "holding over *by wrong* after the determination of the tenant's interest." The former, I think, means a holding over by the express or implied assent of the landlord, and would, in the absence of the present statute, constitute a tenancy from year to year. The latter is a mere wrongful holding in opposition to and in defiance of the will of the landlord. The difference between a holding over and a wrongful holding over is too manifest to require illustration.

This construction of the first section harmonizes the first and second sections, and makes each consistent with itself and with each other.

The second section proceeds to enact, in substance, that when a tenant holds possession without right, after the estate is determined by the terms of the lease by its own limitation, that is where, by the agreement of the parties, the tenancy is to end on a particular day, and the tenant hold over, the landlord may do what? Give notice? No. He may, on written complaint on oath to a justice of the peace, have a summons issued, &c. This section also provides that when the tenant holds over after his estate has been determined by a notice to quit or otherwise, the landlord may make complaint, &c. In other words, the manifest meaning and intent of the second section is, that whenever the tenancy ends, if the tenant does not quit the premises, the landlord may institute forthwith this summary

proceeding before a justice of the peace to obtain possession. The tenancy ends with the period for which the premises are leased. If the parties make no agreement as to the length of time for which the premises are leased, the tenancy may be ended by a notice of thirty days, if such tenancy was created subsequently to the 4th of July, 1864. If it was created before that time, and is still subsisting, it can be ended only in the manner prescribed by the law as it existed before the passage of the act last mentioned.

One other question of some importance is raised in this case, as to what person or persons are entitled to resort to this summary proceeding to recover the possession of real estate. The first section uses the words "landlord and tenant," but the second section drops the word landlord and says, "on written complaint on oath of the *person entitled to the premises,*" application may be made, &c. If this language be understood in its broadest acceptation, it would seem to imply that any one who had a legal title to the premises held by the tenant, might institute this summary proceeding to recover possession, whether that title was derived from the actual landlord or from some other source. Obviously, that cannot be the intent and meaning of this language; for, if so, it would at once subvert the common law action of ejectment, and substitute this summary proceeding in its place. The use of the words "*person* entitled to the premises," instead of the word "landlord," as in the first section, evinces an intention on the part of the legislature to extend this summary remedy beyond the actual lessor or landlord.

The true intent and meaning of the legislature was (I think) to extend this remedy to all persons who, by the act of the lessor or by operation of law, are placed in the same relations to the tenant as the original lessor, to wit, the grantees or assignees, devisees and heirs-at-law of the lessor.

If this construction of the statute be the true one, it fol-

*17*

lows that these complainants cannot institute this summary proceeding against the defendants in this case. They are not grantees, devisees, or heirs-at-law of the lessor of the premises in dispute. They certainly are not the landlords of these defendants. Before the expiration of the term of the tenants now holding over, the plaintiffs or complainants obtained from Mrs. Scott, the lessor of the defendants, a lease of the premises for the term of five years, to commence at the expiration of the defendant's tenancy. No relation, therefore, of landlord and tenant ever subsisted between these parties by express contract or by implication of law. This exposition of the statute will confine its provisions to what is its declared purpose, viz., to regulate proceedings in cases between landlord and tenant.